IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Rene Garcia Colindres, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 24 C 10842 |
| | ) | |
| City of Chicago Police Officers, Mychael Ramos, Badge No. 12622, and Federico Santos, Badge No. 14231, and City of Chicago, | ) | |
| Defendants. | | |

MEMORANDUM OPINION AND ORDER

This is the rare civil rights case in which everyone genuinely agrees about what happened. Sensibly, too, since the entire episode, which lasted around 30 minutes from start to finish, was captured audio-visually from beginning to end, and from various vantage points, by the defendant officers' body worn cameras. The only dispute is whether the officers had probable cause to arrest plaintiff after he told them that he was carrying a firearm; allowed the officers to remove the weapon from his waistband; then handed them his Concealed Carry License ("CCL"), which, although apparently valid, did not turn up when the officers searched the Law Enforcement Agencies Data System ("LEADS"). The question is before me on defendants' motion for summary judgment, so I recount

the facts in the light most favorable to plaintiff. *See Neita v. City of Chicago*, 148 F.4th 916, 922 (7th Cir. 2025).

Plaintiff was a passenger in a vehicle that Officer Ramos pulled over at approximately 12:53 p.m., on January 4, 2024, because the vehicle lacked a front bumper and front license plate. When asked, the driver of the vehicle told Officer Ramos that he did not have car insurance. Officer Ramos said that he smelled marijuana and asked the driver if there was marijuana in the car. The driver answered affirmatively and gave Officer Ramos consent to search the vehicle. Both the driver and plaintiff then exited the vehicle. At the time, plaintiff was carrying a concealed firearm on his person.

After exiting the vehicle, plaintiff told the officers that he was in possession of a weapon. He put his hands in the air, showed non-defendant Officer Shepard a firearm in his waistband, and allowed Officer Shepard to remove the loaded weapon[1] and keep it for the duration of the stop. When asked, plaintiff said that he had a CCL and handed it to Officer Santos. Officer Ramos then ran plaintiff's information through LEADS using his in-car

[1] Although the parties' L.R. 56.1 statements do not state explicitly that the firearm was loaded, footage from Officer Santos's body worn camera shows Officer Shepard removing the weapon from plaintiff's waistband, after which he can be heard saying to plaintiff, "I'm going to unload it, all right?" after which he removes the magazine from the gun. Def.'s Exh. 5 at 4:19-4:32. Additionally, plaintiff does not object to defendants' references in their memorandum to his "loaded" weapon.

computer. The search did not show that plaintiff had an Illinois CCL on file, so Officer Ramos called into dispatch to request that an officer there run plaintiff's information "just to make sure" that the information from his in-car computer was accurate. Dispatch reported to Officer Ramos that plaintiff did not appear to have either a FOID card or a CCL.

After consulting with other officers who were on the scene, including a sergeant, Officer Ramos placed plaintiff under arrest for concealing a firearm without a valid CCL and handcuffed him at approximately 1:11 p.m. Officer Ramos explained: "[w]hatever it says on your card, it has to come back on my computer. So right now, that is not happening." Defs.' L.R. 56.1 Stmt., ECF 64 at ¶ 20. Officer Ramos further told plaintiff: "We are going to bring you in. Figure it out a little more. If you got your concealed carry, you'll be on your way with your weapon." *Id.* at ¶ 21. The footage of the parties' interaction throughout this time reveals that everyone was speaking calmly and acting cooperatively.

Plaintiff was then placed in Officer Santos's car for transport. While in transport, Officer Santos and his partner ran plaintiff's information in their in-car computer, which revealed that plaintiff had a valid CCL. Accordingly, Officer Santos turned his car around and returned to the location of the traffic stop roughly three minutes and eleven seconds after beginning the drive

to the station. At approximately 1:25 p.m., plaintiff was released from handcuffs and his weapon and ammunition were returned.

Meanwhile, Officer Ramos issued a ticket to the vehicle driver for his missing front license plate. Video footage shows that the stop then concluded with plaintiff and the driver chatting with officers in a relaxed manner before shaking Officer Ramos's hand and returning to their vehicle as the parties bid each other farewell. This action followed.

Plaintiff asserts claims for false arrest against Officers Santos and Ramos, seeking damages from them individually pursuant to 42 U.S.C. § 1983. He also seeks damages from the City of Chicago for the tort of wrongful imprisonment on the theory of *respondeat superior*.[2] His claimed injuries are emotional: during his approximately thirteen-minute arrest, *see* Pl.'s L.R. 56.1 Stmt., ECF 69 at ¶ 7, he was afraid that he would be imprisoned, and since that time, he has suffered fear and anxiety over the possibility that he would again be arrested.

[2] For the sake of precision, I note that for plaintiff to prevail against the City on the theory of *respondeat superior*, he would have to prove an underlying violation of state law by one or more of its employees, since the City cannot be liable in *respondeat superior* for its employees' constitutional torts. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Yet plaintiff does not appear to pursue the theory that the individual officers' conduct violated state law.

As previewed above, my analysis begins and ends with the issue of probable cause, since its existence "is an absolute defense" to both federal and state claims based on a wrongful arrest. *Neita v. City of Chicago*, 148 F.4th 916, 931 (7th Cir. 2025); *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022). An officer has probable cause to arrest when the totality of the facts and circumstances within the officer's knowledge objectively support a reasonable belief that the individual has committed a crime. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). "This is a 'common-sense inquiry requiring only a probability of criminal activity.'" *Braun*, 56 F.4th at 548 (quoting *Leaver v. Shortess*, 844 F.3d 665, 669 (7th Cir. 2016)). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Defendants argue that no reasonable juror could find on the undisputed evidence that plaintiff's brief arrest was unsupported by probable cause. After Officer Shepard removed a loaded firearm from plaintiff's waistband, and both Officer Ramos's LEADS query from his in-car computer and a separate search performed by another officer in a different location failed to confirm that plaintiff had a valid concealed carry license, the officers were faced with facially contradictory evidence: the physical card plaintiff provided, which suggested that he had a valid CCL, and the LEADS results, which suggested that he did not. Faced with this

inconsistence, defendants insist, the officers reasonably relied on the LEADS results to conclude that plaintiff was in violation of 720 ILCS 5/24-1.6(a)(3)(A-5), which prohibits a person from carrying on a public street an uncased, loaded, immediately accessible firearm without having been issued a concealed carry license. I agree.

It is true, as plaintiff observes, that the officers "never contended that there was anything on the [CCL] car itself that led them to believe the CCL was invalid." Resp., ECF 67 at 4. But the Constitution does not require police officers in the field to presume the validity of documents provided to them or to resolve inconsistencies in the facts they observe prior to making an arrest. While officers "should pursue reasonable avenues of investigation and may not close [their] eyes to facts that would clarify the situation," *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009), "[t]here is no constitutional or statutory requirement that before an arrest can be made the police must conduct a trial," *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (citation omitted). Moreover, officers in the field are entitled to rely on information they obtain from LEADS. *See, e.g.*, *Dakhlallah v. Zima*, 42 F. Supp. 3d 901, 908-09 (N.D. Ill. 2014) ("a reasonable arresting officer would have relied on LEADS, an official government database, in making a probable cause determination.").

Here, the officers took reasonable steps to corroborate the evidence plaintiff presented of his authorization to carry a loaded firearm in public. When two separate LEADS inquiries failed to confirm the validity of plaintiff's CCL, the officers reasonably relied on the LEADS searches to believe that he was committing a firearms offense. And when a subsequent LEADS inquiry eliminated that inconsistency, defendants reasonably relied on *that* search to conclude that plaintiff was indeed authorized to carry his weapon. Accordingly, they released him moments later, returned his firearm and ammunition, and sent him on his way. Because no reasonable jury could conclude on these facts that Officers Ramos or Santos arrested plaintiff without probable cause, defendants' summary judgment motion is granted.

**ENTER ORDER:**

Elaine E. Bucklo
United States District Judge

Dated: October 1, 2026